STATE OF MAINE

KNOX, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-03-060
JRA-KNO-2

DAVID AHO and CAJEE, INC.,

Plaintiffs

v.

**DECISION AND ORDER**

ACADIA INSURANCE COMPANY
and ALLEN AGENCY,

Defendants

## I.    Introduction.

FEB 7 2005

In this case, David Aho and Cajee Incorporation have brought a four-count amended complaint against Acadia Insurance Company (Acadia) and Allen Agency (Allen) stemming from Acadia's refusal to compensate the plaintiffs for their losses occasioned by the sinking of their vessel, the Cajee.

Counts I and II of the amended complaint are brought against Acadia and plead, respectively, declaratory judgment and breach of contract. Counts III and IV allege, respectively, breach of contract and negligence against Allen.

The defendants have brought separate motions for summary judgment seeking final disposition of the entire case in their favor. For their part, the plaintiffs have filed timely oppositions to these motions and, as to Allen's motion only, have asked for summary judgment to be entered for them on their complaint against this defendant.

Also pending is Allen's motion to strike a portion of plaintiff Aho's affidavit which was filed as part of the plaintiffs' opposition to Allen's motion for summary judgment.

This decision and order purports to dispose of these three motions.

## II. Facts.

As is well understood in Maine law, summary judgment may be entered if there is no issue as to any material fact and that a party is entitled to judgment as a matter of law on those facts. M.R. Civ. P. 56(c). Accordingly, the court is required to review the factual submissions of the parties in order to determine whether a movant is entitled to judgment in its favor on the material facts not in dispute. After undertaking this review, the court concludes that it can make the following factual findings in this case:

Plaintiff David Aho is the primary or sole shareholder of plaintiff Cajee, Inc. which owns boats used for commercial fishing. The corporation owns a fishing vessel, the Cajee, which is the subject of this lawsuit. This boat was purchased in 1997 or 1998.

The Cajee sank in 1998 or 1999 while it was owned by either Aho or Cajee, Inc. It was entirely covered by water except for the boat's wheelhouse. Following the sinking, the Cajee was repaired and restored to service.

In 2002, in order to satisfy the interests of his bank, which had a security interest in some of the boats owned by Aho and Cajee, Inc., Aho was required to procure insurance for his lobster and scalloping boats, the Cajee and the Lauren T.

In June of 2002, Aho contacted Allen Agency in order to procure a commercial marine insurance policy for these boats. He dealt with Karen Reed of Allen who took Aho's application for insurance over the phone. She completed the application by asking Aho some of the questions and filled in a form based on his answers.

Aho's only recollection of anything discussed during that conversation with Karen Reed was that he told her that he wanted insurance for Cajee and that she asked him to get a survey for the boat.

According to Karen Reed, while completing the application, she asked Aho if Cajee had ever sustained a loss or whether he had brought a claim within the last five

years to which he replied, "no." Aho has submitted an affidavit which denies that Reed ever asked him if Cajee had ever sustained a loss.[1] Aho has also submitted an affidavit in which he asserts that he did not volunteer the information that the Cajee had previously sunk because he did not believe that it was important to obtain insurance.[2] Karen Reed signed the application and forwarded it to Acadia without having Aho review and sign it.

The plaintiffs understood that Allen was selling the insurance policy as agent of Acadia. Acadia required that Aho provide a marine survey along with the application for insurance. In the Spring of 2000, Aho hired Stephen Bunnell to perform a condition/value marine survey of Cajee. Bunnell was recommended to Aho by Gene McKeever of Allen Agency. Bunnell is an experienced professional marine engineer.

Bunnell surveyed the Cajee in June of 2002. He performed a condition and value survey exclusively for financing and insurance purposes. At the time of the survey, Aho did not inform him that the Cajee had sunk and this is not a question that Bunnell typically asks owners. He did not ask Aho this question and Aho has testified that he does not recall if he disclosed to Bunnell that Cajee had sunk in 1998 or 1999. If Bunnell had had knowledge of the prior sinking, he would have completed his survey in greater detail and would have followed up with Aho as to the conditions under which the boat had sunk. According to Bunnell, a prior sinking of a vessel would be of interests to a prospective buyer and would reduce a boat's value by 10 to 15 percent. Bunnell has also testified that he would not change his June 2002 opinion of the value and condition of the Cajee after learning that the Cajee had sunk sometime prior to June 2002.

---

[1] This factual dispute is the subject of the pending motion to strike which seeks to have Aho's denial stricken.

[2] Acadia has denied this assertion, but has cited no record reference to refute it. Its position is that this statement is contrary to Aho's deposition testimony so must be ignored. The court does not concur with this assessment and has been directed to no part of the deposition which contradicts this statement.

Reed understood that knowledge of a loss would be important to an insurance company and that if there had been a loss, it would have been difficult or impossible to procure insurance coverage. In his affidavit, however, Aho represents that he believed that the underwriters had all the important information that they needed to effectively determine their risk in issuing a policy for the Cajee because Bunnell never inquired about any prior sinking, the sinking had occurred a number of years earlier, Aho had not seen the application filled out by Reed, and because he had provided the value and condition survey for the Cajee. He also asserts as a reason for this belief that Reed had never asked about a prior sinking.[3]

In making a decision as to whether to issue a policy, the underwriting department at Acadia Insurance Company considers the history of the vessel including any damages it may have sustained or whether the vessel has ever sunk. If the underwriting department had learned through an application that a vessel had sunk, it might request a further survey of the vessel to explore how this prior sinking might affect the seaworthiness of the vessel, or it might deny the application entirely and refuse to issue a policy. If the plaintiffs' application for insurance had properly indicated that the Cajee had sunk in 1998 or 1999, Acadia would have required additional information before issuing a marine insurance policy. In issuing marine insurance policies, Acadia relies on vessel owners to completely disclose all losses sustained by a vessel in order to properly assess the risk of insuring that vessel.

On June 24, 2002, Acadia issued a marine insurance policy to David Aho and Cajee, Inc., insuring the Cajee with an annual premium of $6,983 and an effective date of June 30, 2002. It issued the policy based on the application of insurance provided by

---

[3] As noted in footnote 1, *supra*, this assertion is subject to Acadia's motion to strike.

Karen Reed of Allen. In part, Acadia issued the policy based on the representation contained in the application for insurance that Cajee had never sustained a loss.

The policy required Aho and/or Cajee, Inc. to pay 25% of the premium up front followed by 11 equal monthly payments.

On June 25, 2002, Acadia mailed a billing notice to Cajee, Inc. and David Aho at their address of P.O. Box 52, Rockport, Maine, requesting a premium payment in the amount of $2,226 to be made before July 20, 2002. The billing notice read, "payment must be received by 7/20/02."

Aho received the June 25, 2002, billing notice at the address cited which he has agreed is his correct mailing address.

At the time the policy was obtained through Allen, the plaintiffs understood that bills for the policy would be received directly from Acadia.

The premium bill of June 25, 2002, was not paid until August 23, 2002. Aho did not pay the insurance bill on time because of cash flow problems. At the time it was paid, the plaintiffs knew that it was overdue. Also, at that time, the plaintiffs knew from a lot of personal experience that insurance companies cancel policies for nonpayment of premiums. Even though they knew that payment was overdue, the plaintiffs never contacted either Allen or Acadia about the payment or the status of the policy.

On July 25, 2002, Acadia mailed a notice to the plaintiffs advising that if the premium was not paid, the insurance would be cancelled effective August 9, 2002, at 12:01 a.m. This notice was sent to Cajee, Inc. and David Aho at their correct business address. Acadia has produced a post office certificate of mailing confirming a mailing to this address on the date cited.

Acadia did not receive, and the plaintiffs did not send, the premium payment by July 20, 2002.

On July 26, 2002, Allen received a copy of the notice of cancellation and the "final notice" that payment must be received by Acadia by August 9, 2002.

On August 16, 2002, Acadia mailed to David Aho and Cajee, Inc. a "cancellation notice" indicating that the marine insurance policy was cancelled for nonpayment of premium. Another billing notice was sent at the same time for the outstanding prorated premium for the period of June 24, 2002, through August 8, 2002, in the amount of $958.

On August 20, 2002, Allen received a copy of the notification of cancellation advising the agency that the policy for David Aho and Cajee, Inc. had been cancelled as of August 9, 2002.

Aho asserts that Allen never informed him of Acadia's cancellation of his policy.[4]

On August 23, 2002, Aho sent a check in the amount of $2,226 to Acadia for payment of the premium.

The Cajee sank on August 31, 2002. On the Tuesday following the sinking, Aho talked with the Allen Agency about his claim under the policy for damages due to the sinking and was advised by Allen that Acadia had cancelled the policy.

David Aho has testified that he never received any further notices or correspondence about the policy covering the Cajee during June, July and August of 2002 other than the June 25, 2002 billing notice. He has also agreed that regardless of whether or not he received the cancellation notice, it was his duty alone to make sure that the payments were made on time.

---

[4] Allen denies this assertion but the record references it relies on do not contradict this claim except that the record shows that it did advise Aho of the cancellation of the policy after the Cajee had sunk.

The cancellation clause in the insurance policy procured by Allen for Aho and the Cajee in part states, "Notice [of cancellation] to the agent is deemed as being notice to the assured."

In July of 2002, Allen contacted Aho and Grindle Point Lobster Company to advise him that his business auto coverage had been cancelled for nonpayment of premium.

In 1999, 2001, and 2002 before arranging for coverage for the Cajee, Allen solicited Aho's insurance business and suggested additional coverage. In this correspondence with Aho, Allen had stated that it is important that Aho feel confident that his coverage would be there in the event he suffered a loss, that he is getting "the best protection," and that Allen values his trust in the agency. Rossignol Dep., Exhs. 3, 4, 5. There is no evidence that Cajee, Inc. ever sought to procure any insurance through Allen, or elsewhere, prior to June 2002, but Aho has bought insurance for himself or his businesses there.

Aho has acknowledged that it was "a very bad practice" on his part to depend on the Allen Agency to call him, apparently to remind him of unpaid premiums on insurance policies, but that he had become accustomed to it. Aho Dep. II, p. 75, lines 13-15. Aho has bought insurance for himself or his companies through other insurance agencies over the years. It had been common, for a number of years to the present, for Aho to receive notices of intent to cancel and cancellation notices from insurance companies. This had happened on most policies on multiple occasions.

The plaintiffs never had any contract or agreement with Allen that it would call them if the Cajee policy was cancelled by the insurance company. There was also no

---

[5] The plaintiffs allege in their claims against Allen that it had a duty to notify them of the cancellation of the Cajee policy.

discussion between Aho and Allen about any special agreement to make sure that the coverage for the Cajee was never cancelled. There was also never any promise from Allen that they would make sure that the Cajee was always insured and that the policy never lapsed for nonpayment of premium.

## III.    Motion to Strike.

By this motion, Allen seeks to strike paragraph 4 of the October 12, 2004 affidavit of David Aho because, Allen says, it contradicts his deposition testimony. The court further understands that by this effort Allen is also asking the court to disregard or exclude from consideration the plaintiffs' statement of material facts which relies on paragraph 4.

Paragraph 4 of Aho's October 12, 2004 affidavit reads, "When taking my application for insurance, Karen Reed did not ask me if the F/V Cajee ever sustained a loss."

The portion of Aho's earlier deposition which Allen claims contradicts paragraph 4 is found at pages 58 and 59 of Aho's June 16, 2004 deposition. It reads in pertinent part as follows:

Q.    How did you contact the Allen Agency at that time?

A.    I believe I called Karen and said I need insurance on the black boat.

Q.    The black boat?

A.    Yeah.

Q.    Meaning the – is that how you referred to the Cajee?

A.    Yes.

Q.    And had you had some experience with Karen Reed before then?

A.    Yes.

\* \* \* \*

Q. What do you recall of that conversation with Karen Reed other than that you wanted insurance on the black boat?

A. I need insurance on the black boat, and she asked me to get a survey.

Q. Do you recall anything else that either of you discussed during that conversation?

A. No.

Q. Do you recall anything else that she said or you said?

A. No.

Q. No?

A. No.

According to Allen's' argument, the affidavit testimony cannot be considered because it violates the rule articulated in *Zip Lube, Inc. v. Coastal Savings Bank,* 1998 ME 81, ¶ 10, 709 A.2d 733, 735 that, "a party will not be permitted to create an issue of material fact in order to defeat a summary judgment motion simply by submitting an affidavit disputing his own prior sworn testimony." "When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *Id.* (quoting *Colantuoni v. Alfred Calcagni & Sons,* 44 F.3d 1, 4-5 (1st Cir. 1994)).

Before addressing the parties;' arguments in this dispute, it is worth observing that Aho's affidavit was prepared after Karen Reed had been deposed on July 14, 2004, and had testified that Aho had answered "no" to her question if he had any losses or claims within the last five years. Reed Dep., p. 39, lines 20-22. Aho was present at this deposition. Thus, it may be argued, Aho's affidavit is simply an attempt to create a dispute of fact concerning the content of his conversation with Reed over his prior loss

experience when he had previously testified that he did not fully remember the content of that conversation.

While there may be cause to suspect that Aho's affidavit was created for this purpose, on the face of these submissions the court cannot find that it runs afoul of the holding of *Zip Lube, Inc. v. Coastal Savings Bank, id.* That is because Aho was not specifically asked at his deposition if Reed had asked him about his prior loss history. He was only asked what else he recalled about the conversation. That he says he remembers, albeit later, than she did not ask about his loss history is not "clearly contradictory" of his deposition testimony. *Id.* After all, it is within common human experience that people remember things after their memory has been prompted which, arguably, could have occurred here after Aho heard Reed's testimony. So, while Aho may be confronted if there were to be a trial with the alleged inconsistency in his deposition testimony versus his affidavit, the court concludes that the contents of the latter is not "clearly contradictory" so that paragraph 4 of the affidavit must be stricken. That being so, the motion is to be denied.

## IV. Acadia's Motion for Summary Judgment.

As noted, infra, Acadia seeks summary judgment in its favor on the two counts in the amended complaint brought against it. Count I seeks a declaratory judgment that Acadia did not properly cancel the insurance policy for the Cajee so that it was in full force and effect when it sank. Count II alleges that Acadia breached its insurance contract with the plaintiffs by failing to compensate them for the loss of the Cajee.

In support of its motion, Acadia advances two arguments, either of which, it says, serves to defeat the plaintiffs' claims against it.

The first of these is that the doctrine of *uberrimae fidei*, "the utmost good faith," BLACK'S LAW DICTIONARY 1524 (7th ed. 1999), requires an assured under federal maritime

insurance law to affirmatively disclose any circumstance which would materially affect the insurer's risk, and the failure to adhere to this requirement renders the policy voidable. *Windsor Mount Joy Mutual Insurance Co. v. Giragosian*, 57 F.3d 50, 54-55 (1st Cir. 1995). Thus, Acadia argues, by their failure to disclose that Cajee had previously sunk, which would be a material circumstance affecting Acadia's acceptance of the risk in insuring the vessel, Aho and Cajee, Inc. cannot turn to that policy to recover their loss upon the sinking of this vessel.

The plaintiffs do not dispute that this insurance doctrine applies in this case, but argue that it ought not to be applied here because a reasonable person in Aho's position would not know that the prior sinking of the Cajee would affect the decision of an insurer to accept the risk of insuring this vessel. This is because he and his surveyor were never asked about a prior sinking and he never saw nor signed the application for insurance. Accordingly, the plaintiffs say, there are disputes of fact as to the materiality of the prior sinking of the Cajee as to the decision to insure the vessel so that a jury must decide this issue.

Acadia responds to this argument by reference to case law to the effect that an applicant's loss history is a fact material to the risk assumed in providing marine insurance. Thus, Acadia says, this court ought to follow their cited precedents and determine that prior loss history, as a matter of law, is material to the acceptance of a marine risk. Once so decided, then the court's application of the doctrine of *uberrimae fidei* would void the Cajee's policy.

The cases relied on by Acadia, however, do not hold that, as a matter of maritime insurance law, that any failure to disclose a prior loss would void the applicable policy. Thus, in the case of *Reliance National Insurance Co. v. Hanover*, 222 F.Supp.2d 110, 116-17 (D.Mass. 2002) the federal district court held that an insured's standard for disclosure

> … is an objective one, that is, whether a reasonable person in the assured's position would know that the particular fact is material. To be material, the fact must be 'something which would have controlled the underwriter's decision' to accept the risk. The assured's failure to meet this standard entitles the underwriter to void the policy *ab initio*.

(quoting *Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 13 (2d Cir. 1986).

According to this case, then, the test is whether a reasonable person in the position of the insured party would know that a particular fact is material, namely something which would have controlled the insurer's decision to accept the risk. If the assured cannot meet this standard, the policy is voidable.

When this test was applied to the facts in *Reliance National Insurance, id,* the District Court concluded that whether a yacht owner's misstatement as to the purchase price of his vessel was material to the insurance risk would be a question of fact which could not be resolved as a matter of law.

The defendant also relies on the case of *Certain Underwriters at Lloyd's v. Montford,* 52 F.3d 219, 222 (9th Cir. 1995) which cites California precedent for the proposition that, "[a]n insurance applicant's loss history is a fact material to the risk." In this case, the Court of Appeals affirmed the entry of summary judgment for Lloyd's voiding the insured's policy because of his misrepresentations and omissions in procuring a maritime insurance policy, including his failure to disclose on his insurance application the total loss of a different vessel two years earlier. The court, however, was faced with no contest over the materiality of the nondisclosure of the prior loss as the insured did not dispute, perhaps because of the state of California law, that Lloyd's agent would not have placed the insurance if the insured had revealed his true loss record.

This court cannot discern from this case that it is a matter of federal maritime law that the failure to reveal a prior loss constitutes a breach of the doctrine of *uberrimae*

*fidei.* The cited case relies on California law[6] and affords no discussion to support its conclusion, probably because the materiality of the undisclosed prior loss was uncontested.

The defendant also relies on the case of *All Underwriters at Lloyds v. Kinney,* 986 F.Supp. 1384, 1386 (S.D. Fl. 1997) which repeats the observation made by the Ninth Circuit in *Certain Underwriters at Lloyds v. Montford, id.,* that the failure to report a prior loss on an application for insurance is a material misrepresentation which voids the insurance. That case, however, is distinguishable from the one at bar because in *Kinney* the insured was specifically asked about his loss history but gave incomplete information in his signed application while here there is a dispute of fact as to whether Aho was ever asked for this information and there is agreement that he never reviewed or signed the insurance application.

While it is true that there is precedent which takes a more inflexible approach to the application of the doctrine of *uberrimae fidei, see e.g., Steelmet, Inc. v. Caribe Towing Corp.,* 747 F.2d 689, 695 (11th Cir. 1984), the court returns to the holding of *Reliance National Co. v. Hanover, id.,* which held that the materiality of the undisclosed information may be subject to a factual dispute which must be resolved at trial. This is inconsistent with the approach of the First Circuit in *Windsor Mount Joy Mutual Ins. Co. v. Goragosian,* 57 F.3d 50, 54-55 (1st Cir. 1995) where the Court of Appeals took a less strict approach to the application of the doctrine of *uberrimae fidei* so that it might vary depending on the facts of the case.

---

[6] The Court of Appeals relied on the California Insurance Code rather than federal admiralty law because the two are "materially the same." *Certain Underwriters at Lloyd's v. Montford, id.* at 222, n.1. The California Code, according to the court, also "permits an insurer to rescind the insurance contract if the insured makes any intentionally false representations." *Id* at 222. Contrary to the facts in *Montford,* there is a dispute of fact in this case as to whether Aho misrepresented his loss history.

Applying the guidance of these two cases, this court concludes that it cannot hold that, as a matter of law, Aho's failure to affirmatively disclose the prior sinking of the Cajee voids the marine policy with Acadia. That is because there is a dispute of fact as to whether a reasonable person in Aho's position would know that this fact was material. There is also evidence in the record that Acadia might not have rejected the risk of insuring Cajee but would have merely asked for a more thorough survey or for more information about the vessel had it known of the prior sinking. Thus, a factfinder might conclude that the fact of the prior sinking of the Cajee would not have "controlled the underwriter's decision to accept the risk." *Reliance National Insurance Co. v. Hanover, id.* at 116-117.

So, because the court concludes that it ought not to take a rigid approach to the application of the doctrine of *uberrimae fidei,* and because there are disputes of fact as to the materiality of the prior sinking of Cajee and the circumstances surrounding its nondisclosure, the court cannot conclude that Acadia is entitled to summary judgment on this basis.

Acadia's second argument is that because it never received a timely premium payment and therefore cancelled the policy via its terms, the policy was not in effect at the time the Cajee sank. The plaintiffs respond to this argument by referring to the policy text which provides that the policy may only be cancelled by giving the insured 15 days notice. So, the plaintiffs say, because they never got a notice of cancellation from Acadia, the policy was not cancelled and was in full force and effect on the date the Cajee sank.

The defendant argues that by virtue of Aho's past experience with cancelled policies upon nonpayment of insurance, the court can reasonably infer that he must have known that his policy covering Cajee would have been cancelled when he did not

pay the first premium installment which was due on July 20, 2002, the bill for which he has acknowledged receiving.

Acadia has also directed the court to two statutory provisions which advise that notice of cancellation by certified mail is conclusive proof of receipt of notice. *See* 24-A M.R.S.A. §§ 2908(5), 3007(5). This defendant, nevertheless, offers that no provision of our Insurance Code applies to a marine insurance policy, implying that federal law controls. As to this argument, the court must disagree.

As an initial matter, the case law demonstrates convincingly that the interpretation of a marine insurance contract "is determined by reference to state law, in the absence of a specific and controlling federal admiralty rule." *Coastal Savings Bank v. Arkwright-Boston Mfrs. Mutual Ins. Co.*, 686 F.Supp. 17, 20 (D. Me. 1988) (citing *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 316 (1955)). *See also Acadia Ins. Co. v. Allied Marine Transport, LLC*, 151 F.Supp.2d 107, 117 (D. Me. 2001). Because there has been no reference to a specific controlling provision of admiralty law, and this court knows of none, it is necessary to refer to state insurance law in order to discern how cancellation of a marine insurance policy is to be accomplished.

The insurance code defines marine and transportation, "wet marine" insurance, in part, as insurance against loss or damage to "vessels . . . and all other kinds of property . . . in respect to . . . or in connection with any and all risks or perils of navigation . . ." 24-A M.R.S.A. § 708(1)(A)(1). As such it differs in no respect to the definition of property insurance which is insurance "on real or personal property *of every kind* . . . against loss or damage from *any and all hazard or cause* . . ." 24-A M.R.S.A. § 705 (emphasis supplied), except that marine insurance makes reference to perils of navigation as a "hazard or cause." Thus, it must be concluded that marine insurance is a type of property insurance, the policies for which maintain the same objective, namely

to insure against loss of property by the hazards applicable. That being so, it is appropriate to turn to the Insurance Code's property insurance provisions to learn how it prescribes the methods to cancel this type of insurance.[7] Indeed, not only does the Code mandate this approach, *see* 24-A M.R.S.A. § 3001, because there are no special provisions in the Insurance Code governing notices of cancellation of marine insurance, reference to the property insurance provisions in the Code for this purpose is logical.[8]

At section 3007(5)(C) within the Code's chapter governing property insurance, one finds the following text governing notices of cancellation.

> 5.      Cancellation or nonrenewal is not effective until notice is received by the insured as follows:
>
> * * * *
>
> C.      A post-office certificate of mailing to the named insured at his last known address shall be conclusive proof of receipt of notice on the 3rd calendar day after mailing.[9]

Thus, because Acadia has produced a post-office certificate of mailing addressed to Cajee, Inc. and Aho, dated July 25, 2002, which cancelled their marine insurance policy on the Cajee, this statute requires the court to conclude that they received the notice three days later, on July 28, 2002. That notice advised the plaintiffs that the insurance was cancelled on August 9, 2002. Because the notice was mailed on July 25, it complied with the policy provision which calls for a 15-day notice.[10]

From all this, the court determines that Acadia had the legal authority to cancel the plaintiffs' marine policy and did so in accordance with State law with the result that,

---

[7] The code provides that a property insurer may cancel a policy for nonpayment of premium. 24-A M.R.S.A. § 3007(2)(A).

[8] It is, perhaps, for this reason that our federal court in *Coastal Savings Bank v. Arkwright-Boston Mfrs. Mutual Ins. Co.*, *id.* 686 F.Supp at 20, opined that, in the context of a marine insurance policy, one must look to the state insurance code as to how a notice of cancellation is to be effectuated.

[9] Even if this were to be considered a casualty insurance policy, the cancellation provisions would be the same. 29-A M.R.S.A. § 2908(5)(C).

[10] Even if the 15-day notice period were to begin to run on July 28, the day the plaintiffs are presumed to have received it, the effective cancellation date would have been August 12, well before Aho mailed Acadia the premium due and well before the Cajee sank. A 10-day notice of cancellation would also be effective notice under our Insurance Code. 24-A M.R.S.A. § 3007(5)(A).

at the latest, the policy was cancelled as of August 12, 2002. Because this occurred before the sinking of the Cajee, the plaintiffs may not turn to Acadia as their insurer to recoup this loss. Accordingly, summary judgment must be entered for this defendant on counts I and II of the amended complaint.

## V. Allen's Motion for Summary Judgment.

At the outset, it ought to be observed that Allen is correct in that Acadia's success in establishing that the plaintiffs' marine policy was effectively cancelled means that the plaintiffs have no cause of action against Allen. This is because this court has determined that the policy was validly cancelled for a reason authorized by law and that there is a conclusive presumption that the plaintiffs received notice of that cancellation prior to their loss. That being so, summary judgment may be entered for Allen on the counts against it.[11]

This result notwithstanding, it is worth giving brief attention to Allen's arguments as to why summary judgment ought to be entered in its favor.

In count III of the amended complaint, the plaintiffs claim that Allen had a contractual obligation to notify them of any cancellation of their policy and its failure to do so breached this contract.

As the uncontested facts in this case show, however, the plaintiffs have agreed that they never had any contract with Allen that it would call them if the policy covering the Cajee were cancelled and have also agreed that there had been no discussion between Aho and Allen as to any special agreement that the policy would never be cancelled. Allen, of course, contests that they had any obligation to notify the

---

[11] At oral argument, plaintiffs' counsel agreed that if Acadia prevailed on its policy cancellation argument, they could not prevail in their claim against Allen.

plaintiffs of the cancellation of their policy and there is no evidence that there was such an obligation.

As our Law Court has held:

> To establish a legally binding agreement the parties must have mutually assented to be bound by all its material terms; the assent must be manifested in the contract, either expressly or impliedly; and the contract must be sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties. For a contract to be enforceable, the parties thereto must have a distinct and common intention which is communicated by each party to the other.

*Stanton v. University of Maine System*, 2001 ME 96, ¶ 13, 773 A.2d 1045, 1050-51 (internal citation and quotations omitted).

In the case at bar, there is an absence of any manifestation of an agreement or common intention among these parties expressed in writing or verbally that Allen would notify Aho and Cajee, Inc. of the cancellation of their marine policy.

The plaintiffs, however, cite the language in the policy that "Notice [of cancellation] to the agent is deemed as being notice to the assured" bound the agent, Allen, to notify the plaintiffs of cancellation as the latters' agent.

For several reasons, this argument cannot prevail. First, as the plaintiffs have conceded, Allen sold them a policy as Acadia's agent. Second, the contract of insurance was, including the notice of cancellation provisions, unambiguously a contract between the plaintiffs and Acadia to which Allen was not a party. Next, State law provides that an agent "is the insurer's agent in all matters of insurance." 24-A M.R.S.A. § 2422(1). Finally, the basis for cancellation of a policy and the import of the types of cancellation notices are prescribed by Maine law which, in this highly regulated industry, may not be contradicted by an insurance contract. *See* 24 M.R.S.A. §§ 2908(5)(C), 3007(2)(A), 3007(5)(C). These provisions provide for direct notice of cancellation by the insurer to the insured. Because, as the court has found, Acadia did provide that direct notice,

which the plaintiffs are presumed to have received, there is no basis in law, or on these facts, for the plaintiffs to have recourse against the insurer's agent upon their alleged lack of notice of their policy's cancellation.

The balance of the plaintiffs' argument that there was an implied contract rests on Aho's reference to Allen's promises of good service and a separate incident in which Allen notified Aho of cancellation of a separate policy for a separate company he controlled. This one event, and Aho's own expectations of service do not, however, constitute a mutual agreement by which both parties are bound. *See Stanton v. University of Maine System, id.*

From all this, the court must conclude that the plaintiffs had no contract with Allen to provide them notice of cancellation of their marine policy, and they cannot, therefore, prevail on count III of the amended complaint.

A similar fate must befall count IV. In that count, the plaintiffs allege that Allen had a duty to notify them of the cancellation of their marine policy but failed to honor this duty with the result that this policy was cancelled without notice to them.[12]

In support of its motion, Allen cites the case of *Sunset Enterprises v. Webster & Goddard*, 556 A.2d 213, 215-16 (Me. 1989) for the proposition that:

> Absent special facts . . . it is generally well settled that once a policy has been procured as requested, the relationship terminates and no further duty is owed the insured by the insurance agent with respect to such insurance. Specifically, where an insurance company is required to give direct notice of cancellation to the insured, as is the case here, the insurance agent is not liable for a failure to notify, since he is justified in assuming that the insured would be made aware of the cancellation from other sources.

---

[12] Curiously, the plaintiffs never use the words "negligently" or "with negligence" in the text of this count which is titled "Negligence.".

(quoting *Rocque v. Co-operative Fire Insurance Assoc. of Vermont,* 438 A.2d 383, 386 (Vt. 1981).

Because the facts in *Sunset Enterprises* closely resemble the facts in the case at bar, Allen persuasively argues that there is no basis "for concluding as a matter of common law tort that whenever a carrier cancels coverage an agent has a separate obligation to notify the customer. *Sunset Enterprises v. Webster & Goddard, Inc., id.,* 556 A.2d at 215.

The force of this precedent notwithstanding, the plaintiffs say that because the policy provides that notice of cancellation to the agent was deemed to be notice to the insured, Allen had a duty to notify them, the insured parties, of the cancellation. Thus, they say, because under the policy Acadia had no obligation to notify them but was allowed to notify Allen only, Allen had a duty to advise the plaintiffs of the policy's cancellation.

In truth, however, by law Acadia did have the duty to notify the plaintiffs of the policy's cancellation and has demonstrated conclusively that they complied with the law governing the policy's cancellation. Accordingly, Allen had no duty to notify the plaintiffs and cannot be held accountable for a duty discharged by the party properly responsible for this act particularly where, as here, Maine law would specifically absolve it of tort liability under circumstances such as these.

Finally, the plaintiffs rely on Texas precedent to the effect that an agent is to notify an insured when a policy expires. In the case cited, however, the Supreme Court of Texas merely held that when an insurance agent receives a notice of a policy's expiration date *intended* for its customer, it must take reasonable steps to inform that customer of the policy's expiration date. *Kitching v. Zamora,* 695 S.W.2d 553, 554 (Tex. 1985). The distinction between that case and this is obvious. Here, Allen never received a cancellation notice intended for the plaintiffs, as had the agent in *Kitching,* so, under

the reasoning of the Supreme Court of Texas, it had no obligation of notifying the plaintiffs of the policy's cancellation date.

In the end, then, the court must conclude that Allen had no obligation under contract or tort theories of recovery to notify the plaintiffs of the cancellation of their marine policy. Instead, by law, Acadia had that responsibility and discharged it as our insurance code provides. Accordingly, the plaintiffs have no causes of action against these defendants and summary judgment must be entered in their favor on all counts in the amended complaint.

## VI.    Conclusion.

The Clerk is DIRECTED to make the following entries:

A.    Acadia Insurance Company's Motion for Summary Judgment is GRANTED. Judgment is ENTERED for Acadia Insurance Company on Counts I and II of the Amended Complaint.
B.    Allen Agency's Motion for Summary Judgment is GRANTED. Judgment is ENTERED for Allen Agency on Counts III and IV of the Amended Complaint.
    Plaintiffs David Aho and Cajee, Inc.'s request for summary judgment to be entered in their favor on Counts III and IV of the Amended Complaint is DENIED.

So ordered.

Dated: February ⎰, 2005

John R. Atwood
Justice, Superior Court

DAVID AHO AND CAJEE, INC. V. ACADIA INSURANCE COMPANY
JTN:AOCSsr  -2003-0085906              CASE #:ROCSC-CV-2003-00060
---------------------------------------------------------------------
SEL VD                          REPRESENTATION TYPE       DATE
01 0000007084 ATTORNEY:LUCY, JOHN B
ADDR:ONE MERCHANTS PLAZA, SUITE 603 PO BOX 2429 BANGOR ME 04402-2429
     F FOR:ALLEN AGENCY                       DEF       RTND  03/23/2004


02 0000006821 ATTORNEY:ROBERTS, CATHY
ADDR:THREE CANAL PLAZA PO BOX 4630 PORTLAND ME 04112-4630
     F FOR:ACADIA INSURANCE COMANY            DEF       RTND  09/11/2003


03 0000008640 ATTORNEY:LEVESQUE, DAVID
ADDR:15 BELVEDERE ROAD PO BOX 647 NEWCASTLE ME 04553
     F FOR:DAVID AHO                          PL        RTND  08/21/2003



                         *More Attorneys*
          Enter Option: A=Add, B+Sel=Browse, M=More, R+Sel=RltnEdit:M

Select the EXIT KEY for page selection line.