1998 ME 81

**ZIP LUBE, INC.**

v.

**COASTAL SAVINGS BANK.**

Supreme Judicial Court of Maine.

Submitted on Briefs Jan. 16, 1998.

Decided April 23, 1998.

John D. Clifford, IV, Clifford & Golden, P.A., Lisbon Falls, for plaintiff.

Deirdre M. Smith, Drummond Woodsum & MacMahon, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, RUDMAN, DANA, LIPEZ and SAUFLEY, JJ.

DANA, Justice.

[¶ 1]   Zip Lube, Inc. appeals from a summary judgment entered in the Superior Court (Kennebec County, *Atwood, J.*) in favor of Coastal Savings Bank on Zip Lube's breach of contract claim contending that the court erred when it determined that Zip Lube presented no admissible evidence of a contract.   Finding no error, we affirm the judgment.

[¶ 2]   In early 1995, Northern Pride Car Wash Systems, Inc. defaulted on a mortgage note held by Coastal Savings Bank and, after a threat by Coastal to foreclose on the mortgaged property, filed a petition for protection pursuant to Chapter 11 of the Bankruptcy Code.   Coastal anticipated taking over the car wash as either a mortgagee-in-possession or purchaser and engaged the services of Joseph Malone, a commercial real estate broker, who identified Philip Sewall, the president and principal owner of Zip Lube, as a party interested in purchasing or operating

the car wash. Throughout the spring of 1995, Sewall and Coastal engaged in negotiations for the purchase of the car wash that resulted in several successive written offers to purchase by Sewall, as each previous offer expired without being accepted by the seller or approved by the Bankruptcy Court.

[¶ 3] At some point during the negotiations with Coastal, Sewall was contacted by Northern Pride's attorney, who suggested an arrangement whereby Sewall would assist the debtor in taking the property out of bankruptcy and eventually become sole owner of the car wash. Sewall rejected the proposal, telling Northern Pride's representative "immediately, I don't do business that way." Sewall then called Coastal to inform representatives at the bank that he had been contacted by Northern Pride. The bank made it clear to Sewall that it would not finance any deal that involved the debtor. Sewall also spoke to the bank's attorney, who purportedly told Sewall that the bank would make sure that he got the property. Sewall subsequently called Northern Pride's attorney and told him yet again that he would not deal with the debtor.

[¶ 4] Sometime in June, Yvon Pellerin contacted Coastal through his real estate broker, Karen Rich, to express his interest in purchasing the car wash. Coastal did not pursue Pellerin's interest because it already had a buyer in Zip Lube. On July 12, 1995, the Bankruptcy Court held a hearing on a joint motion brought by Coastal and the debtor for an order authorizing the sale of the debtor's assets. Neither Sewall nor his lawyer were present when the hearing began. At some point during the hearing, the debtor's attorney brought Pellerin's offer to the Bankruptcy Court's attention. Coastal's representative responded by requesting that the court approve the sale to Zip Lube, asserting there was no financing for Pellerin's offer. Nevertheless, the court inquired of Pellerin as to whether he would make a substantially higher offer in order to obtain a larger dividend for the debtor's unsecured creditors, whereupon Pellerin raised his $340,000 offer by ten percent to $374,000. Rich, Pellerin's broker, informed the court, however, that Pellerin could not purchase the property without receiving financing from Coastal. The court ordered a recess and instructed the parties to discuss Pellerin's offer. During the recess, Pellerin, Rich, the bank's attorney, and Janet Ross, a commercial loan officer and vice-president at Coastal, discussed the financing terms and contingencies Pellerin would require to complete the sale.

[¶ 5] At the conclusion of this conference, the bank's attorney presented the terms of Pellerin's offer to the Bankruptcy Court. Compared to Sewall's offer, the Pellerin offer yielded a greater net gain to the bankrupt estate through a higher purchase price and lower commissions. Sewall and his attorney were present in court by this time, and Sewall informed the court that he would not waive the remaining contingencies in his offer to purchase if the Bankruptcy Court approved the parties going forward with Pellerin's offer for the property. Sewall also advised the court that negotiations with Pellerin might lead him to drop out of contention for the debtor's property. The Bankruptcy Court agreed to provide Sewall an opportunity to increase his bid, but he declined to do so by the deadline set by the court. Another hearing was held by the Bankruptcy Court two days later, after which Coastal extended financing to Pellerin as, at that time, Pellerin's offer was the only outstanding offer for the purchase of the property.

[¶ 6] Zip Lube brought suit against Coastal claiming that the bank had breached its promise to finance only Zip Lube and its "guarantee" that Zip Lube would get the property by ultimately financing Pellerin's acquisition of the property. After discovery was completed, the Superior Court granted Coastal's motion for a summary judgment, concluding that even if the bank made the assurances to Zip Lube that Sewall contended, no evidence was presented to establish consideration for an exclusive financing agreement.

■ [¶ 7] An entry of a summary judgment is appropriate when there is no issue of material fact to be determined at trial and any party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). "We review the

Superior Court's entry of a summary judgment for errors of law, viewing the evidence in the light most favorable to the party against whom the summary judgment was entered." *Harkness v. Fitzgerald*, 1997 ME 207, ¶ 5, 701 A.2d 370, 372 (quotation omitted).

 [¶ 8] Zip Lube's contractual theory maintains that Coastal offered to finance Zip Lube exclusively if Zip Lube would agree to decline the debtor's invitation to participate in taking the property out of bankruptcy. According to Zip Lube, its promise to refuse to deal with the debtor constituted acceptance of Coastal's offer, and its actual forbearance in not dealing with the debtor constituted adequate consideration for the contract. In order to establish forbearance Zip Lube had to show "a request from the promisor for the promisee's forbearance [and] the promisee's promise to forbear followed by forbearance." *Zamore v. Whitten*, 395 A.2d 435, 444 (Me. 1978). "Forbearance or omission to act ... in reliance upon a promise cannot constitute a consideration therefor and transform the naked promise into a contract, unless the forbearance ... is, in the legal sense, at the request of the promisor." *Id.*

[¶ 9] Sewall testified in his deposition that upon being contacted by Northern Pride's representative he immediately stated that he would not deal with the debtor because he was working with the bank. Only then, according to Sewall's deposition testimony, did he notify the bank of the debtor's offer. Because of this testimony, Sewall was unable to show that his refusal to deal with the debtor was at the request of the bank, a necessary requirement for proving that his forbearance constituted consideration for the alleged promise. In direct contradiction to this testimony, Sewall testified in an affidavit submitted in opposition to the motion for a summary judgment that he did not communicate his refusal to deal with the debtor until after the bank representatives promised him that he would get the property if he did not deal with the debtor.

[¶ 10] Zip Lube argued in opposition to the motion for a summary judgment,

and maintains on appeal, that Sewall's conflicting testimony is a matter best left to the factfinder to determine his credibility at trial. The trial court disagreed and refused to consider Sewall's affidavit to the extent it conflicted with his deposition testimony. We believe the court acted appropriately and adopt the rule that a party will not be permitted to create an issue of material fact in order to defeat a summary judgment motion simply by submitting an affidavit disputing his own prior sworn testimony. *See Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4–5 (1st Cir.1994). "When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed." *Id.* Because Sewall's deposition testimony clearly revealed that he was not going to deal with the debtor even before speaking to the bank officials, he was unable to demonstrate the forbearance necessary to establish consideration for any alleged agreement between Zip Lube and the bank. Accordingly, the court's grant of a summary judgment to the bank was proper.

The entry is:

Judgment affirmed.