2001 ME 126

**Manley C. GOVE Sr. et al.**

v.

**Jonathan L. CARTER et al.**

Supreme Judicial Court of Maine.

Argued: June 12, 2001.
Decided: July 27, 2001.

Stephen C. Whiting, Esq., (orally), Portland, for plaintiffs.

Edward R. Benjamin Jr., Esq., (orally), Thompson & Bowie, Portland, for defendants.

Panel: WATHEN, C.J.,* and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Manley C. Gove Sr. and Tri Berwick Realty, Inc., (collectively, Gove) appeal from the judgment of the Superior Court (York County, *Fritzsche, J.*) granting a summary judgment to Jonathan L. Carter, the town manager for the Town of Wells. Gove contends that the Superior Court erred in concluding that Carter was entitled to immunity from his suit pursuant to the Maine Tort Claims Act, 14 M.R.S.A. § 8111(1) (1980 & Supp.2000). We affirm the judgment.

## I. BACKGROUND

[¶ 2] The dispute in this matter arises out of the marketing of ocean front property on Wells Beach in the Town of Wells, where the public's interest in the local beaches has historically been a source of dispute and litigation. *See Bell v. Town of Wells,* 557 A.2d 168, 169 (Me.1989) (*Bell II*); *Bell v. Town of Wells,* 510 A.2d 509, 510 (Me.1986) (*Bell I*); *see also Eaton v. Town of Wells,* 2000 ME 176, ¶ 2, 760 A.2d 232, 235. In 1989, seven years prior to the events at issue here, we affirmed a decision of the trial court regarding another beach in the Town of Wells, known as Moody Beach. There we held that the public trust doctrine provided the public with only very limited recreational access to the dry sand of Moody Beach. *Bell II,* 557 A.2d at 169. Wells Beach, at issue here, is located north of Moody Beach.

[¶ 3] Wells Beach has been used and maintained by the Town as a public beach for decades. Title to much of the beach came under scrutiny in the 1990s. In 1996, the Town of Wells commissioned a study to explore the history of ownership of Wells Beach. The report prepared at the conclusion of that study noted that, in most instances, the original developers of Wells Beach conveyed away their rights in the land only as far as "the sea beach," and not "to the Atlantic Ocean" as had the original developers of Moody Beach. Thus, the report's author concluded that the heirs of the original developers of Wells Beach may have retained title to the beach itself. As a result of the uncertainty of ownership resulting from the report, the Town concluded that action was necessary in order to clear up questions. It therefore attempted to negotiate with the heirs to purchase whatever rights the heirs might hold, in order to assure the public's continued right to use the beach.

[¶ 4] Among the heirs to the original developers of Wells Beach were members of the Eaton family. The Town's negotiations with the Eatons were unsuccessful. Manley C. Gove Sr., on behalf of his company Tri Berwick Realty, Inc., was the listing broker for the Eaton family's beach property in 1996.[1] During the fall of 1996, Gove began marketing portions of the Eatons' beach property. As part of the marketing campaign, Gove sent solicitation letters to residents and businesses whose properties abutted portions of, or were near, the Eatons' beach property. In his letter, Gove represented that (1) the Eaton

---

* Although not available at oral argument, Chief Justice Wathen participated in this opinion. *See* M.R.App. P. 12(a) (stating that a "qualified justice may participate in a decision even though not present at oral argument").

1. As of the date of oral argument, Gove remained the listing broker for the Eatons.

family owned the beach between the abutters' properties and the Atlantic Ocean; (2) the Eatons' beach property was being sold at $550 per foot; (3) there was a "high interest" in this property; and (4) title insurance and a title certificate were also being offered for this property. The letter did not mention the Town's asserted interest in the same property, nor did it disclose the fact that title insurance would not likely cover any claim made by the Town against the property.

[¶ 5] In reaction to Gove's solicitation letter, many beach front property owners and businesses from the Town called and visited the town office to speak to the town manager, Jonathan Carter. They were concerned that a private party could purchase and maintain control of the strip of beach between their land and the ocean. They also sought assurances from Carter that the property would continue to be maintained by the Town as a public beach and that they would not lose access to those areas.

[¶ 6] After reviewing a copy of Gove's solicitation letter, in which no mention was made of the Town's claim of interest in the land being offered for sale, Carter, in his capacity as town manager for the Town of Wells, filed a formal complaint with the Maine Real Estate Commission regarding the "manner and method" in which the solicitation was being made by Mr. Gove for the sale of the beach property. Included in the complaint was the following explanation:

> The complaint is filed on Mr. Manley Gove of Tri–Berwick Realty, Inc., on the manner and method of marketing the beach property allegedly owned by the Eaton family.... The Town believes Mr. Gove, in his solicitation, has misrepresented the ownership in the land for sale which his client has not proven they own.

Carter attached to the complaint a copy of Gove's solicitation letter and information regarding members of the Town who had complained about Gove's solicitation efforts. Subsequently, Carter provided a copy of the complaint to the board of selectmen and discussed the status of the complaint and the dispute over the ownership of Wells Beach with the board in an open board meeting. The press also obtained information regarding the complaint from the Town and published articles regarding the complaint and the dispute over the ownership of the beach.

[¶ 7] Gove and Tri Berwick Realty, Inc., brought suit against the Town of Wells and Carter for defamation and tortious interference with prospective business. Carter and the Town moved for a summary judgment. The Superior Court granted the summary judgment on behalf of the Town and Carter, concluding that they were both entitled to immunity from the tort claims. Gove appeals from the Superior Court's judgment only to the extent that it relates to Carter.

## II. DISCUSSION

[¶ 8] We review the Superior Court's grant of summary judgment de novo for errors of law. *See Grossman v. Richards,* 1999 ME 9, ¶ 3, 722 A.2d 371, 373. "Whether a defendant is entitled to governmental immunity is a question of law that may be resolved by a summary judgment in the absence of factual contradiction." *Id.* (quoting *Dubail v. Dep't of Transp.,* 1998 ME 126, ¶ 7, 711 A.2d 1301, 1303). In the matter before us, there are no factual disputes regarding the material aspects of Carter's actions. Carter admitted in his statement of material fact that (1) he filed a complaint with the Real Estate Commission; (2) he reported his actions in filing the complaint to the board of selectmen and discussed that complaint in a public meeting; and (3) he or someone

in the town office released that complaint to the public as part of a media packet or in response to specific requests for the document. Accordingly, the Superior Court's grant of summary judgment was appropriate if, on these facts, Carter was entitled to immunity pursuant to the Maine Tort Claims Act, 14 M.R.S.A. § 8111(1), for those actions.[2] *See Grossman*, 1999 ME 9, ¶ 3, 722 A.2d at 373.

[¶ 9] Carter contends that he is entitled to immunity pursuant to the discretionary function immunity provision of the Act, which grants absolute immunity to "employees of governmental entities" for liability resulting from performing or failing to perform any of the employee's "discretionary function or duty." *See* 14 M.R.S.A. § 8111(1)(C).[3] Immunity pursuant to the discretionary function immunity is "applicable whenever a discretionary act is reasonably encompassed by the duties of the governmental employee in question." [4] *Id.* § 8111(1). Thus, pursuant to the discre-

---

**2.** The Maine Tort Claims Act provides, in relevant part:

> **1. Immunity.** Notwithstanding any liability that may have existed at common law, employees of governmental entities shall be absolutely immune from personal civil liability for the following:
>
> **A.** Undertaking or failing to undertake any legislative or quasi-legislative act, including, but not limited to, the adoption or failure to adopt any statute, charter, ordinance, order, rule, policy, resolution or resolve;
>
> **B.** Undertaking or failing to undertake any judicial or quasi-judicial act, including, but not limited to, the granting, granting with conditions, refusal to grant or revocation of any license, permit, order or other administrative approval or denial;
>
> **C.** Performing or failing to perform any discretionary function or duty, whether or not the discretion is abused; and whether or not any statute, charter, ordinance, order, resolution, rule or resolve under which the discretionary function or duty is performed is valid;
>
> **D.** Performing or failing to perform any prosecutorial function involving civil, criminal or administrative enforcement; or
>
> **E.** Any intentional act or omission within the course and scope of employment: provided that such immunity shall not exist in any case in which an employee's actions are found to have been in bad faith.
>
> The absolute immunity provided by paragraph C shall be applicable whenever a discretionary act is reasonably encompassed by the duties of the governmental employee in question, regardless of whether the exercise of discretion is specifically authorized by statute, charter, ordinance, order, resolution, rule or resolve and shall be available to all governmental employees, including police officers and governmental employees involved in child welfare cases, who are required to exercise judgment or discretion in performing their official duties.
>
> 14 M.R.S.A. § 8111(1) (1980 & Supp.2000).

**3.** This portion of the statute was originally enacted by the Maine Legislature in 1977. P.L.1977, ch. 2, § 2 (effective Jan. 31, 1977). The statute, as it existed then, encompassed a narrower range of discretionary functions under the Act's protections. *See* 14 M.R.S.A. § 8111(1)(C) (1980). Before the amendments, the statute stated, in relevant part:

> Employees of governmental entities shall be personally immune from civil liability for the following:
>
> . . . .
>
> C. The performance or failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused; and whether or not the statute, charter, ordinance, order, resolution, regulation or resolve under which the discretionary function or duty is performed is valid.
>
> 14 M.R.S.A. § 8111(1)(C) (1980), *repealed and replaced* by P.L.1987, ch. 740, § 8 (effective Aug. 4, 1988).

**4.** The Legislature added this language to the Act in 1988. P.L.1987, ch. 740, § 8 (effective Aug. 4, 1988). In so amending, the Legislature declared that:

> To perform their jobs effectively, many government employees are required to exercise

tionary function immunity of the Act, Carter is entitled to immunity if (1) he was an employee of a governmental entity, and (2) his actions were discretionary acts that were "reasonably encompassed" by his employment duties as town manager. *See id.; see also* L.D. 2443, Statement of Fact (113th Legis.1987).

[¶ 10] Gove does not dispute that Carter is an employee of a governmental entity, who may be entitled to the protections of the Act. *See* 14 M.R.S.A. §§ 8111(1), 8102 (1980 & Supp.2000). Gove contends, however, that Carter's actions in this case were not "reasonably encompassed" by Carter's employment duties as town manager. Specifically, relying on our decision in *Rippett v. Bemis,* 672 A.2d 82 (Me.1996), Gove argues that Carter cannot be afforded the protections of discretionary function immunity, because his actions were not essential to accomplish any basic governmental policies or objectives of the Town.[5] Further, Gove argues that Carter's actions violated the provisions of the Real Estate Brokerage License Act, 32 M.R.S.A. § 13006 (1998).

■ [¶ 11] Contrary to the officer's actions in *Rippett,* Carter's actions in this case were not counter to any stated policy, ordinance, or statute. Although the Real Estate Brokerage License Act makes confidential *"hearings and records of hearings* conducted by the grievance committee or the professional standards committee," there were no hearings regarding Carter's complaint in this case. 32 M.R.S.A. § 13006 (emphasis added). In fact, the complaint was subsequently voluntarily withdrawn by Carter before any official action was taken by the grievance committee or the professional standards committee. Thus, nothing in the Real Estate Brokerage License Act prohibited Carter from disclosing the contents of the complaint or the complaint itself to the board or the public.

[¶ 12] Nor was Carter restricted by any town policy or ordinance from releasing his complaint to the public. *See Rippett,* 672 A.2d at 88. His actions were, instead, consistent with the Town's general policy of releasing "a media packet," which included "copies of the agenda for the meeting and copies of documents that will be discussed at the meeting." His actions were also consistent with the Town's statutory obligation to conduct public business in the open and to release all public documents. *See* 1 M.R.S.A. § 402 (1989 & Supp.2000).

■ [¶ 13] Most important to our analysis, Carter's actions were reasonably encompassed by his duties as town manager. *See Grossman,* 1999 ME 9, ¶ 5, 722

---

their discretion in areas which are not specifically governed by a detailed statute. Accordingly, discretionary immunity should exist whenever the activity in question is in fact discretionary and is important to the functioning of the governmental activity involved. This is consistent with the United States Supreme Court's decision on the subject of discretionary immunity in such cases as *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). L.D. 2443, Statement of Fact (113th Legis.1987).

5. In *Rippett,* we held that although a law enforcement officer's actions in investigating allegations of internal departmental misconduct were protected pursuant to discretionary function immunity, the officer's subsequent interview with a television reporter regarding the results of the investigation, "in violation of the York County Sheriff Department's written policy against speaking publicly on the results of internal investigations," was beyond the scope of the protections afforded by the Act. *Rippett v. Bemis,* 672 A.2d 82, 85, 88 (Me.1996). We concluded that under such circumstances, the officer's making of the public statement was not "essential to accomplish any basic governmental policy, program, or objective," and was, in fact, against stated policy. *Id.*

A.2d at 373; 14 M.R.S.A. § 8111(1): 30–A M.R.S.A. § 2636 (1996). As a rule of statutory interpretation, we look first to the plain language of the statute for the Legislature's intent. *N.A. Burkitt, Inc. v. Champion Rd. Mach. Ltd.*, 2000 ME 209, ¶ 6, 763 A.2d 106, 107; *see also Dall v. Caron*, 628 A.2d 117, 119 (Me.1993). Pursuant to the plain language of the discretionary function immunity section of the Act, a government employee is immune from liability if his or her actions were reasonably encompassed "by the duties of the governmental employee in question." 14 M.R.S.A. § 8111(1).

[¶ 14] Where "the duties of the government employee in question" are not clear, we have used a four factor test, first announced in *Darling v. Augusta Mental Health Institute*, 535 A.2d 421, 426 (Me. 1987), to determine whether the employee's actions were encompassed within the discretionary function immunity.[6] *See Darling*, 535 A.2d at 426. Where, as in this case, however, the Legislature has explicitly delineated the "duties of the government employee in question," we look first to the plain language of that statute. *See Kimball v. Land Use Regulation Comm'n*, 2000 ME 20, ¶ 19, 745 A.2d 387, 392; *Huff v. Williams*, 1999 ME 186, ¶ 6, 743 A.2d 1252, 1254. If the plain language of that statute answers the issue at hand, we need not invoke the aid of the four factors to guide our analysis. *See Carroll v. City of Portland*, 1999 ME 131, ¶ 7, 736 A.2d 279, 283 (explaining that the factors "help determine" whether the government employee was protected by the discretionary function immunity).

[¶ 15] Here, pursuant to the Legislature's definition of the duties of a town manager, as set out in 30–A M.R.S.A. § 2636, Carter has the express powers and duties of a "chief executive and administrative official of the town." *Id.* His duty runs to the general well-being of the Town and specifically to the Town's residents and taxpayers. He is required to "assist, insofar as possible, residents and taxpayers in discovering their lawful remedies in cases involving complaints of unfair vendor, administrative and governmental practices." *Id.* § 2636(13). Carter also has a duty to the Town's governing board to "attend all meetings of the board of selectmen," to make recommendations for

---

**6.** Those four factors are as follows:

(1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective?

(2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?

(3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?

(4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Darling v. Augusta Mental Health Inst.*, 535 A.2d 421, 426 (Me.1987) (quoting *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So.2d 912, 918–19 (Fla.1985) (explaining that the factors test "was intended to *assist* in" determining the existence of discretionary function immunity)); *see also Roberts v. State*, 1999 ME 89, ¶ 10, 731 A.2d 855, 857–58 (concluding that a correctional officer's actions were entitled to discretionary function immunity); *Grossman v. Richards*, 1999 ME 9, ¶ 8, 722 A.2d 371, 374 (concluding that a city alderman's statements in a televised meeting were entitled to immunity pursuant to the discretionary function immunity); *Berard v. McKinnis*, 1997 ME 186, ¶ 11, 699 A.2d 1148, 1152 (concluding that the president of volunteer emergency medical services organization was entitled to discretionary function immunity for his actions of reporting to area EMS that organization had revoked its license sponsorship for an employee).

the "more efficient operation of the town," and to inform them and the Town residents about the Town's financial conditions. *Id.* §§ 2636(8)–2636(11).

[¶ 16] Viewed in light of Carter's statutorily identified responsibilities, his actions were "reasonably encompassed" by his employment duties. *See, e.g., Huff,* 1999 ME 186, ¶ 6, 743 A.2d at 1254. Uncontroverted statements in Carter's statement of material facts established that many residents in the Town of Wells brought Gove's solicitation letter to Carter's attention. At the time, the issue of ownership of the beach in the Town of Wells was an issue of business and economic interest to the Town. The Town's residents and businesses expressed their concerns regarding the ownership of the beach in reaction to the solicitation letter. Responding to those concerns regarding Gove's solicitation efforts, Carter reported Gove's efforts to the Real Estate Commission and to the board of selectmen in a public meeting. Whether or not Carter was correct in his concerns regarding Gove's actions, Carter made a judgment to act on the Town's behalf that was reasonably related to his duties of protecting the Town's residents and informing the board and the public of his actions. *See* 14 M.R.S.A. § 8111(1)(C).[7] The Superior Court correctly concluded that the Tort Claims Act shields Carter from exposure to liability for those actions.

The entry is:

Judgment affirmed.

---

7. The Town ultimately prevailed in establishing that the public has a cognizable interest in Wells Beach. *See Eaton v. Town of Wells,* 2000 ME 176, 760 A.2d 232.