STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-05-37
JLL _ 1 · ¼ 9/20/200/

FILED & ENTERED
SUPERIOR COURT

SEP 20 2006

PENOBSCOT COUNTY

Delta Hockey, LLC Inc.,
    Plaintiff

v.

City of Brewer, Maine et al.,
    Defendants

Order (Motion for Summary Judgment)

DONALD L. GARBRECHT
LAW LIBRARY

OCT 1 2 2006

Pending before the court is the defendants' motion for summary judgment on all counts of the complaint. The court has reviewed the parties' submissions associated with the motion. For the reasons set out below, the court concludes that each of the plaintiff's claims is barred by principles of sovereign immunity as codified in the Maine Tort Claims Act (MTCA), see 14 M.R.S.A. §§ 8101 et seq.

A party is entitled to summary judgment when the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. M.R.Civ.P. 56(c); see also Darlings v. Ford Motor Co., 2003 ME 21, ¶ 14, 817 A.2d 877, 879. The motion court views the evidence in the light most favorable to the non-moving party. Benton Falls Associates v. Central Maine Power Company, 2003 ME 99, ¶ 10, 828 A.2d 759, 762. "Summary judgment is appropriate when a defendant is immune from tort liability," which is among the issues raised by the defendants, where the record on summary judgment does not reveal genuine issues of material fact. Grossman v. Richards, 1999 ME 9, ¶ 3, 722 A.2d 371, 373.

Through an agreement with the defendant City of Brewer, in 1995 T.J. Ryan, LLC constructed an ice rink facility on land that it purchased from the City of Brewer at a reduced price. Defendant's statement of material fact (DSMF) at ¶¶ 13, 14 and 16. Hockey is a very popular youth sport in Brewer, and the City promoted the construction of the facility in order to help increase opportunities for local children to have access to a rink, because such time previously had been limited. Id. at ¶¶ 5, 9, and 10. Defendant

1

Manley G. DeBeck, Jr. was a member of the city council at the time of the transaction with TJ Ryan, LLC and was actively involved in the project. *Id.* at ¶ 15. After the facility was constructed, it was used by the Brewer High School team as well as by Brewer Youth Hockey, which is a privately operated league for younger hockey players. *Id.* at ¶¶ 8 and 18. The city owned the surrounding property and built a parking lot as an adjunct to the rink. *Id.* at ¶ 14. TJ Ryan, LLC fell into arrears on the municipal property taxes owed on the rink, and the City filed liens arising from that arrearage. *Id.* at ¶¶ 19 and 21. The plaintiff, Delta Hockey, LLC was formed to purchase the property in order to avoid foreclosure. *Id.* at ¶ 23. Both TJ Ryan, LLC and Delta Hockey were managed by the same person, Louis Janicki. *Id.* at ¶¶ 17, 29, 33-34. In 2001, Delta Hockey acquired the facility and, as part of its purchase, paid the arrearage that had accumulated while TJ Ryan, LLC owned it. *Id.* at ¶¶ 23-24.

Delta Hockey allowed a new arrearage to develop by December 2002, and there have been arrearages on city taxes continuously since that time. *Id.* at ¶¶25-26. Its tax liability for 2004 and 2005 was in excess of $40,000. *Id.* at ¶ 30. In 2005, Delta Hockey advised the City that it would not longer participate in an agreement under which it would receive a credit against its tax debt for ice time used by the City. *Id.* at ¶ 28-29. The City then, by its own action, unilaterally exercised statutory authority to perpetuate that arrangement. *Id.* at ¶ 30. As a city council member, DeBeck was involved in the City's agreement with Delta Hockey and then in the City's decision to invoke its authority to maintain the availability of ice team, despite Delta Hockey's unwillingness. *Id.* at ¶ 31. DeBeck had also received complaints from his constituents about the way Janicki managed the facility. *Id.* at ¶¶ 32, 36-38. When Janicki announced a plan to form a new local youth hockey league that would be a competitor to Brewer Youth Hockey, Brewer residents complained to DeBeck because the new league would reduce the amount of ice time available to the existing league. *Id.* at ¶¶ 40-43, 46-47.

Representatives of Brewer Youth Hockey scheduled a meeting with Janicki and other interested parties to be held in early August 2005, when the future course of Brewer Youth Hockey would be discussed. *Id.* at ¶¶ 44-45. DeBeck attended the meeting in his capacity as a city councilor and at the request of constituents. *Id.* at ¶ 49. DeBeck felt that his responsibilities as a city councilor required him to attend the meeting; he did not

have any children of his own in Brewer Youth Hockey, and he had no personal interest in youth hockey or any other "personal agenda." *Id.* at ¶¶ 50-51.

At the meeting, someone asked Janicki if Delta Hockey had "tax issues" with the City and the amount of tax arrearages. *Id.* at ¶ 58. Janicki responded that such issues existed but that he did not know the amount owed and did not know if the City had filed a tax lien against the property. *Id.* at ¶¶ 59, 68. DeBeck then spoke, first introducing himself as a city councilor who was attending in that capacity and expressing views as a councilor. *Id.* at ¶ 61. Janicki understood this expression of the nature of DeBeck's capacity. *Id.* at ¶ 62. DeBeck then said that the City was considering its options regarding the ice rink and that when the city council took over the rink, it would be better managed than Janicki managed it. Plaintiff's responses to DSMF ¶¶ 63, 66, 70-71, 74.[1] DeBeck made this comment in order to remind Janicki about the City's interest in the continuing available of ice time for Brewer Youth Hockey, local school teams and other public interests and about the City's history of working productively with the facility's management to promote this goal. DSMF at ¶¶ 80, 82. DeBeck's comments related directly to concerns that constituents had expressed to him and constituted matters of public record and public interest. *Id.* at ¶¶ 84-85. The Brewer city charter empowers the city council to provide "the administration of all the fiscal, prudential and municipal affairs" of the city. *Id.* at ¶ 3.

---

[1] The parties dispute the nature and wording of DeBeck's statement. With the exception noted below, the court construes the evidence in the parties' statements as is set out in the text, which reflects that evidence when seen in the light most favorable to the claims of the plaintiff (i.e., the non-moving party).

However, Delta Hockey asserts that DeBeck said that the City was going to take over the ice rink "imminently." *See* plaintiff's statement of additional material fact (PSAMF) at ¶ 98. This assertion, which is based on Janicki's affidavit submitted in opposition to the motion at bar, is not supported by the record. At most, the record indicates that Janicki and others had the impression that the takeover would be imminent. *See* deposition transcript of Louis Janicki at pp. 82, 83. At that deposition, Janicki testified that he had no recollection that DeBeck assigned a timeframe to the City's planned takeover of the ice rink. *Id.* at p. 82. Janicki was deposed prior to the time he executed the affidavit. An affidavit cannot be used to contradict statements that the affiant made previously at a deposition. *See Zip Lube, Inc. v. Coastal Savings Bank,* 1998 ME 81, ¶ 10, 709 A.2d 733, 735. The court therefore excludes from the record any evidence that DeBeck stated at the August 2005 meeting that the City would take over the ice rink "imminently."

3

As of the meeting date, Delta Hockey's tax arrearage owed to the City was approximately $28,000, and the City had filed tax liens on the property. *Id.* at ¶¶ 52-53. However, DeBeck and other members of the city council did not want the City to foreclose on the property but rather preferred that it remain in private ownership and in operation. *Id.* at ¶¶ 55, 79. Further, the City did not have any plans to assume ownership of the facility, although the lien process created the possibility that that result could occur automatically by operation of law. *Id.* at ¶¶ 56, 69. Under that applicable law, if Delta Hockey were to pay the outstanding tax liability, it would prevent the City from obtaining ownership. *Id.* at ¶ 76.[2]

In its complaint, Delta Hockey has alleged three substantive causes of action against DeBeck in his individual capacity and as a representative of the City of Brewer, and against the City itself. Those claims are for fraudulent misrepresentation, negligent or reckless misrepresentation, and tortious interference with a contractual relationship or advantageous relationship. (The fourth count of the complaint seeks punitive damages and does not set out an independent theory of liability.) The defendants have moved for summary judgment on all counts. Included among the grounds for the defendants' motion is their contention that they are immune from liability here under the MTCA.

As is noted above, Delta Hockey has asserted its claims against the City and against DeBeck in both an individual and municipal capacity.

First, as a general principle under the MTCA, the City is absolutely immune from tort liability. 14 M.R.S.A. § 8103(1). That statutory grant of immunity is subject to exceptions set out in section 8104-A. The exceptions found in section 8104-A, however, are subject to limitations, which are created in section 8104-B (entitled "Immunity notwithstanding waiver"). *See Norton v. Hall*, 2003 ME 118, ¶¶ 12-13, 834 A.2d 928, 932; *Peterson v. City of Bangor*, 2003 ME 102, ¶ 6, n. 3, 831 A.2d 416, 418. More particularly, under section 8104-B(3), a governmental entity (which includes a city, *see*

---

[2] The court strikes several of the plaintiff's statements of additional material fact beyond that discussed in note 1 *supra*. These include the reference in PSAMF ¶ 93 to the City's "hostile" attitude toward the formation of a new league, because the foundation for such evidence is not established in this record; the reference in PSAMF ¶ 96 of communications between certain individuals and "the City" for lack of foundation; and PSAMF ¶¶ 100 and 101, for lack of foundation.

4

14 M.R.S.A. §§ 8102(2), (3)) remains immune from liability for acts or omissions involving discretionary functions, even if those acts or omissions fall within one of the exceptions to immunity under section 8103-A. Here, Delta Hockey's claims against the City itself are predicated entirely on the conduct attributable to DeBeck; there are no independent theories of liability that Delta Hockey has pursued against the City, other than the liability that may be vicariously assigned to the municipality on account of DeBeck's own actions. DeBeck's conduct does not fall into any of the exceptions to immunity enumerated in section 8104-A. Thus, Delta Hockey's claims against the City do not invoke any of the exceptions to the immunity established in section 8103. Therefore, under this analysis, there is no need to consider the question of whether the City benefits from any of the section 8104-B limitations to the exceptions to immunity found in section 8104-A, because none of the exceptions arise in the first place. Nonetheless, even if section 8104-B is applicable, the City remains immune from liability for DeBeck's conduct because, for the reasons set out below, that conduct constitutes the exercise of a discretionary function. *See Roberts v. State of Maine*, 1999 ME 89, ¶ 7, 731 A.2d 855, 857 (equating discretionary function immunity of governmental entities and governmental employees)

Next, with respect to Delta Hockey's claims against DeBeck, the record on summary judgment establishes without genuine factual dispute that when DeBeck made the statement that underlies all of Delta Hockey's claims, he did so in his capacity as a member of the city council. In other words, at times relevant to this case, he was an "employee" of the City of Brewer within the meaning of 14 M.R.S.A. § 8102(1), and therefore, under section 8111(1), he is entitled to the applicable protections of the MTCA. Among other arguments to support the motion at bar, DeBeck contends that his alleged conduct was the performance of a discretionary function and that he is consequently immune from civil liability under section 8111(1)(C). Section 8111(1)(C) absolutely immunizes employees of governmental entities from personal civil liability that otherwise would arise from "[p]erforming or failing to perform any discretionary function or duty, whether or not the discretion is abused. . . ." Here, Delta Hockey argues the DeBeck was not engaged in a discretionary function when he falsely stated that the city council was going to take over the ice rink. Unlike the analysis applicable to immunity for

5

governmental entities themselves, the immunity of a governmental employee is the exception and not the rule. *See Carroll v. City of Portland*, 1999 ME 131, ¶ 6, n. 3, 736 A.2d 279, 282. Nonetheless, the court concludes here that DeBeck made his statements at the August 2005 meeting while exercising a discretionary function that arose directly and entirely from his role as a member of the city council.

An individual defendant is entitled to tort claim immunity if he was an employee of a governmental entity and if his actions were discretionary acts that were reasonably encompassed by his employment responsibilities. *See Gove v. Carter*, 2001 ME 126, ¶ 9, 775 A.2d 368, 372. As is noted above, DeBeck was a governmental employee when he made the statements about the ice rink facility at the meeting. The remaining question is whether those comments were discretionary and within the function assigned to him as a city councilor. In this analysis, despite the *Carroll* balance between immunity and exposure to liability, the nature of a governmental employee's act that is claimed to be discretionary is viewed broadly. Thus, the decision of a governmental employee to act is not separated from any defects in the act itself. *See Norton*, 2003 ME 118, ¶¶ 10-13, 834 A.2d at 932-32; *Roberts*, 1999 ME 89, ¶ 10, 731 A.2d at 857-58.

In determining whether an act or omission constitutes an exercise of a discretionary function or responsibility reasonably encompassed within that individual's employment, the first touchstone is any specific definition or delineation of that employee's duties. *Gove*, 2001 ME 126, ¶ 14, 775 A.2d at 374. Here, the record establishes that the city council is responsible for administering ". . .all [of] the [City's] fiscal, prudential and municipal affairs. . . ." Necessarily, the city councilors, including DeBeck, carry out these responsibilities. This is a broad legislative charge and includes issues arising from the management of the ice rink that would affect the public's access to it. DeBeck had had a long-standing involvement in issues relating to the development and management of the facility, and constituents had had contact with him about the very issues that were the subject of the August 5 meeting. Contrary to Delta Hockey's arguments, the issues were not private and divorced from the City's interests, because the City was an ongoing user of the rink and was a central player in the evolution of the facility's programs, in which public and school league access were important elements. Thus, DeBeck's responsibilities covered concerns about the future of the ice rink, and

6

public statements about its financial status made in response to the inquiries of others are within the scope of those responsibilities. Further, DeBeck's public statements were not prohibited by any policy or other limitation on his functions. *See Ripley v. Bemis*, 672 A.2d 82, 85, 88 (Me. 1996).

Therefore, as the immunized defendant in *Gove* did, DeBeck "made a judgment" to act (i.e., speak publicly), *see* 2001 ME 126, ¶ 16, 775 A.2d at 375, about issues that bore directly on the status of the ice rink, which was a matter of direct public concern and interest. When evidence of DeBeck's statement is seen most in the light most supportive of Delta Hockey's claims (namely, when that evidence is given the construction noted earlier in this order), then one aspect of that statement is false. That quality, however, does not determine that the statement was outside of the function fairly assigned to DeBeck. *See Gove*, 2001 ME 126, ¶ 16, 775 A.2d at 375 (town manager's "judgment" to report a real estate broker to the Real Estate Commission was a discretionary function even if the he was not "correct in his concerns. . . ."). Similarly, DeBeck remains protected even if he abused his discretion. 14 M.R.S.A. § 8111(1)(C); *Norton*, 2001 ME 118, 834 A.2d at 932. Here, DeBeck's conduct fell within the scope of the discretionary responsibilities that were reasonably encompassed within his duties as a city councilor. As a result, that conduct is immune from forming the basis for civil liability.

Alternatively, when there does not exist a definition of a governmental employee's responsibilities by which to gauge whether his conduct constituted a discretionary function, the Law Court has prescribed the four-part inquiry used to "help determine" whether the employee's conduct is subject to immunity:

> (1) Does the challenged act, omission, or decision *necessarily involve a basic governmental policy, program, or objective?*
>
> (2) Is the questioned act, omission, or decision *essential to the realization or accomplishment of that policy, program, or objective* (as opposed to one that would not change the course or direction of the policy, program, or objective)?
>
> (3) Does the act, omission, or decision *require the exercise of basic policy evaluation, judgment, and expertise* on the part of the governmental employee involved?

7

(4) Does the governmental employee involved *possess the requisite constitutional, statutory, or lawful authority and duty* to do or make the challenged act, omission, or decision?

*Carroll*, 1999 ME 131, ¶ 7, 736 A.2d at 282-83 (emphases in original). As the *Carroll* Court noted, the first, second and fourth factors are useful in determining whether the actor was engaged in performing an official function or duty, and the third factor bears on the question of whether the act was discretionary or ministerial.

As applied here, consideration of the first, second and fourth factors reveals that when he spoke about the ice rink facility at the August meeting, he was engaged in an official function or duty. The important backdrop of this conclusion is established in that part of the record on summary judgment that demonstrates that DeBeck was present at the meeting solely in a governmental capacity and then spoke with the same capacity. First, his comments about the financial status of the rink involved a matter in which the City had taken an active interest. Further, if he made a statement that the city council was going to assume ownership and management of the facility (a contention that the court adopts for purposes of this motion), then that statement's relationship to a municipal program and objective was even stronger than a statement simply about the facility's present tax status. Second, DeBeck's made his comments in the context of a meeting where the future of the rink's use and public accessibility was under active discussion by concerned constituents. When a concerned citizen raised the issue about the facility's financial standing with the City, Janicki was unable to provide full information. DeBeck then contributed to the discussion, irrespective of whether (as Delta Hockey contends here) he made a statement that was factually incorrect. These circumstances indicate that DeBeck, as a municipal official, was participating in a public discussion about matters that would affect the public's use of the ice rink. Finally, for the reasons noted above, the record reveals that DeBeck had authority to participate in a public forum about this matter of public concern, as he had done previously.

Regarding the third of the *Carroll* considerations, DeBeck's statement was not a ministerial act. He exercised judgment to attend the meeting and then to make a public statement about the subject of discussion.

For these reasons, whether the matter is analyzed on the basis of direct evidence of the nature and scope of DeBeck's responsibilities as a city councilor, or on the basis of

8

the more generalized assessment grounded in the four factors noted above, the court concludes that the conduct forming the basis of the complaint ascribed to the governmental employee constituted an exercise of a discretionary governmental function. Accordingly, the action against DeBeck is barred under the MTCA.

The entry shall be:

For the foregoing reasons, the defendants' motion for summary judgment is granted. Summary judgment is entered for the defendants. They are awarded their costs of court.

Dated: September 25, 2006

Justice, Maine Superior Court
Jeffrey L. Hjelm

9

DELTA HOCKEY LLC INC - PLAINTIFF
C/O LEWIS JANECKI P O BOX 3255
BREWER ME 04412
Attorney for: DELTA HOCKEY LLC INC
DAVID J VAN DYKE  - RETAINED 02/22/2005
HORNBLOWER LYNCH RABASCO & VANDYKE
261 ASH STREET
PO BOX 116
LEWISTON ME 04243-0116

SUPERIOR COURT
PENOBSCOT, ss.
Docket No   BANSC-CV-2005-00037


DOCKET RECORD


VS
BREWER MAINE CITY OF - DEFENDANT
80 NORTH MAIN ST,
BREWER ME 04412
Attorney for: BREWER MAINE CITY OF
EDWARD R BENJAMIN JR - RETAINED 03/14/2005
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630


MANLEY DEBECK  - DEFENDANT OBO
80 NORTH MAIN ST,
BREWER ME 04412
Attorney for: MANLEY DEBECK
EDWARD R BENJAMIN JR - RETAINED 03/14/2005
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630


CITY OF BREWER - ORGANIZATION
80 NORTH MAIN ST
BREWER ME 04412


Attorney for: CITY OF BREWER
EDWARD R BENJAMIN JR - RETAINED 03/14/2005
THOMPSON & BOWIE
THREE CANAL PLAZA
PO BOX 4630
PORTLAND ME 04112-4630



Filing Document: COMPLAINT                    Minor Case Type: CONTRACT
Filing Date: 02/22/2005

## Docket Events:
02/22/2005 FILING DOCUMENT - COMPLAINT FILED ON 02/22/2005

02/22/2005 Party(s):  DELTA HOCKEY LLC INC
           ATTORNEY - RETAINED ENTERED ON 02/22/2005
           Plaintiff's Attorney: DAVID J VAN DYKE

02/22/2005 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 02/22/2005
           TO PLAINTIFF'S ATTORNEY.