STATE OF MAINE
PENOBSCOT, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-06-186 /
JLH - PEN-11/5/2007

Gary Tibbetts,
    Plaintiff

v.

Order (Motion for Summary Judgment)

David Worcester et al.,
    Defendants

FILED & ENTERED
SUPERIOR COURT

NOV 0 _ 2007

PENOBSCOT COUNTY

DONALD L. GARBRECHT
LAW LIBRARY

FEB 06 2008

Pending before the court is the motion of defendant Dairyland Insurance Company for partial summary judgment. The court has reviewed the parties' submissions on the motion. For the reasons set out below, the court grants the motion in part and denies the motion in part.

A party is entitled to summary judgment when the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. M.R.Civ.P. 56(c); *see also Darlings v. Ford Motor Co.*, 2003 ME 21, ¶ 4, 825 A.2d 344, 345. The motion court views the evidence in the light most favorable to the non-moving party. *Benton Falls Associates v. Central Maine Power Company*, 2003 ME 99, ¶ 10, 828 A.2d 759, 762. An issue is considered genuine "if there is sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial." *Prescott v. State Tax Assessor*, 1998 ME 250, ¶ 5, 721 A.2d 169, 171-72 (inner citation omitted). A fact is considered to be material if it could potentially affect the outcome of the case. *Id.* ¶ 5, 721 A.2d at 172.

This case arises out of a vehicular collision. At the time of the collision, the plaintiff, Gary Tibbetts, was operating a motorcycle owned by one Robert Clark. David Worcester drove the other vehicle involved in the collision. Tibbetts settled a personal injury claim against Worcester for the full amount of Worcester's automobile liability coverage. In this action, Tibbetts seeks recovery under the underinsured motorist provisions of several insurance policies issued by several insurers. Three of those

1

policies had been issued by Dairyland. Dairyland issued one of those policies to Tibbetts for coverage on his own motorcycle. In the second, the named insured was Dayna Herz, who resides with Tibbetts. And Clark was the insured on the third Dairyland policy, which covered the motorcycle involved in the accident at issue. In the motion at bar, Dairyland first contends that the policy that it issued to Clark does not provide coverage to Tibbetts, because at the time of the collision his use of Clark's motorcycle was not permissive. Second, Dairyland argues that whether two or three of its policies cover Tibbetts for his losses, the amount of medical payment coverage is limited to the single highest amount of such coverage provided in them.

## A. Coverage under Clark's policy

The policy issued by Dairyland to Clark provided, "Anyone occupying, *with your permission*, a motorcycle we insure has the same rights and obligations that you have under this insurance." (Original italics omitted; emphasis added.) DSMF ¶ 18. Under Clark's policy, Dairyland would be obligated to pay Clark, as the insured, for damages that he would otherwise be entitled to recover from an uninsured or underinsured motorist. *Id.* ¶ 17. Therefore, Tibbetts would be entitled to the same coverage under Clark's policy with Dairyland -- *if* he had been using Clark's motorcycle with Clark's permission at the time of the collision.

Tibbetts owned and operated a motorcycle repair business located in Brewer. DSMF ¶ 7. Clark brought his motorcycle to Tibbetts' business for repairs. *Id.* ¶ 8. On June 15, 2006, Tibbetts used Clark's motorcycle to drive to his home in Bangor. *Id.* ¶¶ 12-13. Tibbetts intended to drive the motorcycle on a 15 to 20 mile trip through Old Town and then back down to Bangor. *Id.* ¶ 13. The collision occurred during this trip. *Id.* ¶ 12. The direct route between his shop and his home is two miles. *Id.*

The focus of the parties' arguments on the motion at bar concerns the reason why Tibbetts drove Clark's motorcycle. The record on summary judgment quotes his verbal deposition testimony prior to his submission of an errata sheet pursuant to M.R.Civ.P. 30(e) and his execution of an affidavit submitted as part of the record on the summary judgment motion. *Id.* ¶ 12. During the deposition, Tibbetts stated that he made a spontaneous decision to use Clark's motorcycle to drive home; he "just felt like taking a ride" because the weather was good; he could not use his own motorcycle because it did

2

not have a current registration; and Clark's vehicle "was the only thing I had to ride." *Id.* At his deposition, Tibbetts further stated that "one of the reasons" he intended to drive Clark's motorcycle home that day was because when he would have returned to the shop the following morning, the engine would be warm, and that would allow him to do more work on the carburetor. PSAMF ¶¶ 32, 35. His deposition testimony also includes the following exchange:

> Q. And was *the reason* you went – you weren't going home directly this evening was because it was nice out and *you were just going for a ride*?

> A. Yeah. Yes. I had been really busy in the shop and hadn't done any riding, and actually, it had been raining most of the month. And it just finally got nice out and just felt like taking a ride.

DSMF ¶ 12 (emphasis added).

Clark was deposed in this case immediately after Tibbetts' deposition. DSMF ¶ 14. Clark testified that he expected that a test drive would be part of the repair process but that he would not expect the mechanic to use his motorcycle for personal trips. *Id.* ¶ 14. Further, Clark stated that he did not give Tibbetts permission to use his (Clark's) motorcycle for personal errands or trips. *Id.* ¶ 15.

In the errata sheet and in an affidavit, Tibbetts subsequently provided additional information about the reasons why he drove Clark's vehicle at the time of the collision. In those submissions, he stated that he had completed initial repairs on Clark's motorcycle and wanted to take it for "a long test drive. . . ." PSAMF ¶ 23.

Dairyland has objected to Clark's assertions set out in the errata sheet and in his affidavit, to the extent that those assertions contradict his deposition testimony. If Dairyland's objection has merit, the resulting record on summary judgment would establish as a matter of law that Tibbett's use of Clark's motorcycle at the time of the collision was not permissive. That limited record would reveal only that Tibbetts used Clark's motorcycle as a way to commute home and that the ride would let him warm up the engine the next morning on the return trip. Neither explanation would even arguably allow the long detour to be seen as the product of permissive use. On the other hand, if the record on summary judgment properly includes Tibbetts' additional information that the route he planned to take when the collision occurred constituted a test drive, then that

3

evidence would give Tibbetts a factual platform on which he could argue that his use was permissive.

". . .[A] party will not be permitted to create an issue of material fact *in order to defeat a summary judgment motion* simply by submitting an affidavit disputing his own prior sworn testimony." *Zip-Lube, Inc. v. Coastal Savings Bank*, 1998 ME 81, ¶ 10, 709 A.2d 733, 735 (emphasis added). Corrections presented under rule 30(e) are viewed as affidavits, *see Donald M. Durkin Contracting, Inc. v. City of Newark*, 2006 U.S. Dist. LEXIS 68221, at *13-14, thus allowing those errata designations to fall under the *Zip-Lube* analysis. Because *Zip-Lube* calls for an inquiry into whether the supplemental material was developed for the purpose of defeating a summary judgment motion, the Law Court's approach appears to be in concert with the "sham fact issue" approach invoked in federal cases. *See, e.g., Durkin, id.* As the *Durkin* court framed the issue in precisely the same circumstances as are present here, if a motion opponent "improperly" alters his prior sworn testimony, he has created a "sham fact issue," which is insufficient to defeat the summary judgment motion. *Id.*, at *16-17. An alteration to that prior sworn testimony may be improper even when it complies with the allowance created by rule 30(e) for a deponent to change the substance of the prior sworn verbal deposition testimony. *Id.*, at *16. Thus, the inquiry is substantive and not procedural. In other words, the mere fact that Tibbetts was permitted to amend his deposition testimony as he did is not dispositive of Dairyland's challenge to the integration of that amended information into the record on summary judgment.

Here, one element of the record on summary judgment saves Tibbetts from the otherwise necessary conclusion that he sought to inject a sham defense through the information he produced subsequent to his verbal deposition testimony. The essence of Dairyland's argument is that, when faced with the contention that he did not use Clark's motorcycle permissively, Tibbetts added information to his deposition testimony to suggest that he rode the motorcycle at the time of the collision as part of the repair process. The record on summary judgment, however, includes evidence that prior to the time Dairyland contends that Tibbetts first developed a motive to fabricate his explanation for using Clark's motorcycle, Tibbetts told Clark that he was test driving the motorcycle at the time of the collision. PSAMF ¶ 31. Dairyland objected to this

4

assertion in Tibbetts' statement of additional material facts, contending that it is hearsay. However, in this context, Tibbetts' own statement is not hearsay and is admissible as a prior consistent statement. *See* M.R.Evid. 801(d)(1). Thus, that evidence is properly included in the present record. That evidence also means that its reiteration subsequent to Tibbetts' verbal deposition cannot necessarily be seen as a "sham" or an attempt to manufacture a factual dispute for the purpose of defeating Dairyland's motion.

Accordingly, the court concludes that Tibbetts' rule 30(e) supplement to his oral deposition testimony is a proper part of the record on summary judgment and that it is sufficient to create a genuine basis on which he may argue that his use of Clark's motorcycle was permissive. This leaves the applicable exclusion from coverage predicated on the determination of a factual issue that cannot be resolved here.

## B. Limitation of medical payment coverage

Each of the three Dairyland policies implicated by Tibbetts' claim provides medical payment benefits. DSMF ¶ 6. The amount of that coverage in the Clark policy is $5,000, and the Tibbetts and Herz policies each allow $1,000 in medical payment coverage. *Id.* Each of the policies also provides, "When medical expenses are payable under more than one policy issued by us, we [Dairyland] won't pay more than the highest limit in any one such policy." *Id.* ¶ 20; PSOMF ¶ 20. Dairyland seeks summary judgment that would preclude Tibbetts from recovery under the medical payment coverage of any sum in excess of $5,000.

The court first concludes that the policies' limitation on the amount of recoverable medical payment expense is clear and unambiguous. Thus, unless that provision is unlawful, it operates to limit Dairyland's exposure on that part of the three policies.

Tibbetts argues that the limitation violates 29-A M.R.S. § 1605-A, which provides in pertinent part:

> A motor vehicle liability policy issued for a motor vehicle registered or principally garaged in this State must provide coverage in an amount equal to or greater than $1,000 per person for medical costs incurred as a result of injuries sustained in an accident involving the insured vehicle by the driver and passengers in that vehicle.

Tibbetts argues that if Dairyland were relieved of its obligation to pay him under his policy and the Herz policy because of any obligation to pay him under the Clark policy,

5

then the effect of this limitation would be to do away with the required medical payment provision in those two policies altogether.

The Law Court rejected a similar argument in *Moody v. Horace Mann Ins. Co.*, 634 A.2d 1309 (Me. 1993), where the Court held that although all automobile insurance policies were statutorily required to provide uninsured motorist protection, an insurer was entitled contractually to limit, through an excess-escape clause, the amount of that coverage to the highest limit contained in any one applicable policy issued by that insurer. *Id.* at 1311. The Court reasoned that an anti-stacking provision in the policies does not mean that the mandatory coverage in any of the policies becomes void. *Id.* Rather, such a provision "merely defines the monetary limit. . .without purporting to dictate that any recovery in that amount is confined to one of the policies." *Id.* That the multiple policies at issue in *Moody* were issued to a single insured does not undermine the applicability of that caselaw to the case at bar. The fundamental question is whether a single insurer issued multiple polices with medical payment coverages, thus triggering the anti-stacking term. That is the case here.

Just as in *Moody*, here, notwithstanding the anti-stacking effect of the coverage limitation provisions in the policies, each policy retains medical payment coverage that meets the requirements of section 1605-A. The limiting provisions consequently are not unlawful, and the aggregate limit of Dairyland's liability to Tibbetts under the medical payment coverage included in the three policies is $5,000.

The entry shall be:

For the foregoing reasons, defendant Dairyland's motion for summary judgment is granted in part and denied in part. Summary judgment is entered for Dairyland on any claim against the medical payment coverage provisions in excess of $5,000. Beyond this, the motion for summary judgment is denied.

Dated: November 5, 2007

Justice, Maine Superior Court
Jeffrey L. Hjelm

6

GARY TIBBETTS VS DAVID WORCESTER ET AL
UTN:AOCSsr  -2006-0099136                    CASE #:BANSC-CV-2006-00186
--------------------------------------------------------------------
GARY TIBBETTS                                              PL
ATTY GREIF, ARTHUR
ATTY ADDR:82 COLUMBIA ST PO BOX 2339 BANGOR ME 04402-2339


DAVID WORCESTER DISMISSED                                  DEF
ATTY PIERCE, KENNETH
ATTY ADDR:95 EXCHANGE ST PO BOX 7046 PORTLAND ME 04112-7046


MMG INSURANCE CO                                           DEF
ATTY POLIQUIN, JAMES D.
ATTY ADDR:415 CONGRESS ST PO BOX 4600 PORTLAND ME 04112


DAIRYLAND INSURANCE CO                                     DEF
ATTY HADDOW, JON
ATTY ADDR:PO BOX 738 BANGOR ME 04401-0738


NATIONAL INDEMNITY COMPANY                                 DEF
ATTY LIBBY, KEVIN
ATTY ADDR:95 EXCHANGE ST PO BOX 7046 PORTLAND ME 04112-7046


                                                          DEF